UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**04 CV    2787** (KMW)

------------------------------------------------------------- x

THE CITY OF NEW YORK,

Plaintiff,

-against-

ALBERT ELOVITZ, INC.,

Defendant.

------------------------------------------------------------- x

**COMPLAINT**
**JURY TRIAL DEMANDED**

**ECF CASE**

04 Civ.

RECEIVED
APR 12 2004
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff the City of New York (the "City"), by its undersigned counsel, for its complaint against the defendant, respectfully alleges, with knowledge of its own actions and on information and belief as to the actions of others, as follows:

1.      This action is based upon the sale by the defendant of a variety of merchandise bearing unauthorized reproductions of the famous acronyms and other marks of the New York City Police and Fire Departments.  Some of these designs are registered or pending trademarks in the United States Patent and Trademark Office.  The City of New York also owns several state trademark registrations and a federal copyright registration for its proprietary marks and designs, and has licensed these marks and designs to others itself and through authorized agents since at least as early as the mid 1990's.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over the Lanham Act claims set forth below by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the other claims set forth below by virtue of 28 U.S.C. §§ 1338(b) and 1367 and the doctrine of pendent jurisdiction.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claims herein occurred in this district and because the defendant, a corporation, may be deemed to reside in this district because it is subject to personal jurisdiction in this district.

### THE PARTIES

4.     Plaintiff the City of New York ("the City") is a municipal corporation organized under the laws of the State of New York. The New York City Police Department ("NYPD") and the New York City Fire Department ("FDNY") are agencies of the City.

5.     Upon information and belief, the defendant Albert Elovitz, Inc. is a Pennsylvania corporation with offices located at 3001 Penn Avenue, Pittsburgh, PA 15201.

### THE TRADEMARKS OF THE NYPD

6.     The City, through the NYPD, owns all copyrights, trademarks, logos, names, and insignias of the Police Department of the City of New York, including the acronym NYPD (the "NYPD Mark") and the NYPD Shield Design (collectively, the "NYPD Marks").

7.     The City, by and through the NYPD, has provided police and civil protection services since at least as early as 1845.

8.     The City, by and through the NYPD, has continuously used, since at least as early as July 1, 1971, a design consisting of the terms POLICE DEPARTMENT CITY OF NEW YORK surrounding a shield design (the "NYPD Shield"). A copy of this design is attached as Exhibit A.

- 2 -

9.      Further, since at least as early as November 1993, the City has used the NYPD Mark to identify itself and its services on goods sold to the public.  The City owns applications for federal trademark registration of the NYPD Shield (Serial No. 76/342,569) and the NYPD Mark (Serial No. 76/342,567), which are currently pending at the Patent and Trademark Office.  Attached hereto as Exhibit B are true and correct copies of printouts of the status information obtained from the Trademark Office's on-line database concerning the City's federal trademark applications for the NYPD Shield and the NYPD Mark.

10.     The City, through the NYPD, has also obtained New York State trademark registrations for the NYPD Shield (Reg. No. R-29800) and NYPD Mark (Reg. No. R-29799).  Attached hereto as Exhibit C are true and correct copies of the New York State trademark registrations for these trademarks.

11.     The City also owns registrations for the NYPD Marks in California (Reg. Nos. 108,017 and 108,018), and an application for registration of the NYPD Mark and Shield in Canada.

12.     Through many years of use by the City and the NYPD, the NYPD Marks have come to represent the highest standards of quality and character with respect to matters of public safety and public service, throughout the United States and the world.  As a result of the NYPD's exceptional reputation, and the media attention and other publicity the NYPD has received throughout the years, the NYPD Marks have acquired tremendous goodwill and value, and are now recognized throughout the United States and the world as uniquely designating the Police Department of the City of New York.  The goodwill and reputation associated with the NYPD Marks, and the public's association of the NYPD Marks with the NYPD, have grown

dramatically in light of the tragic events of September 11, 2001. The distinctive NYPD Marks are famous, and are among the best known trademarks and logos in the United States.

### Authorized Use of the NYPD Marks

13.    The City, by and through the NYPD, has applied the NYPD Shield to memorabilia and promotional items, and has continuously used, since at least as early as July 1, 1971, the NYPD Shield on caps, t-shirts and sweatshirts.

14.    The City, by and through the NYPD, has applied the NYPD Mark to memorabilia and promotional items, and since at least as early as November 1993 has continuously used, itself or through its licensees, the NYPD Mark on caps, t-shirts and sweatshirts.

15.    In addition, the NYPD has permitted the manufacture and distribution of merchandise bearing the NYPD Marks through the New York City Police Foundation, Inc., a nonprofit corporation dedicated to improving public safety in New York City through innovative police-related projects, such as Crime Stoppers (the 1-800-577-TIPS hotline) and the donation of animals and equipment for the NYPD's Mounted and K-9 Units. Through various sub-licenses the New York City Police Foundation has authorized, for the benefit of the NYPD, numerous diverse products bearing the NYPD Shield and Mark including children's sleepwear, lounge pants and boxer shorts and sets, active wear for men, women, and children, long johns, resin figurines, plush dogs and horses, plush beanie bears, infant's clothing, pencils, pens, pen cases, playing cards, mugs, glassware, collectible plates and spoons, wallets, backpacks, messenger bags, handbags, mint tins, picture frames and photo albums, keyrings, snowglobes, mouse pads,

- 4 -

pendants, children's Halloween costumes, slippers and moccasins, leather outerwear, action figures, ceramic figurines, die-cast vehicles (including tow trucks, police cars, boats, and helicopters), watches, lighters, lapel pins, magnets, metal coin banks, bicycles, scooters, bike helmets, accessory kits, throws, pillows, and wall hangings, and numerous other items.

16.     Prior to 1997, the Foundation marketed a variety of consumer goods including handkerchiefs, scarves, apparel, patches, caps, jewelry, key chains, children's clothing, plush toys and coffee mugs carrying the NYPD Mark. Such items were sold to the public through the Police Foundation's "Cop Shop" catalog, with proceeds from retail sales used by the Foundation to support of the Police Department's programs.

17.     The license agreements authorizing the various goods referenced above include provisions for the prior approval by the NYPD or its designees as to the design, quality, style, packaging, advertising, publicity and display of authorized merchandise, and for the approval of product samples.

18.     Authorized licensed merchandise generally bears a hangtag or packaging showing the NYPD logo, together with a legend identifying the NYPD name and logo as trademarks of The New York City Police Department. Copies of representative hangtags that accompany City-authorized NYPD merchandise are attached as Exhibit D.

19.     The NYPD Marks have been widely associated with the City and the NYPD, and have been prominently featured in print and broadcast media, in promotional activities, and through the national distribution of licensed goods. The NYPD Marks are famous, and they and their associated goodwill are valuable assets of the City.

- 5 -

**Enforcement of the NYPD Marks**

20.     Through the New York City Police Foundation, Inc., the City has aggressively pursued individuals and companies selling unauthorized or infringing merchandise bearing the NYPD Marks. Hundreds of cease and desist letters have been served by hand on vendors and retailers in New York City and by mail and email on retailers and internet sellers throughout the U.S. and in other countries. Cease and desist letters are also regularly sent to registrants of domain names incorporating the NYPD trademark, virtually all of whom have agreed to cancel or relinquish the offending names. The Foundation successfully prosecuted an ICANN proceeding against the registrant of the domain name fdnyandnypd.com.

21.     The City has also obtained agreements from third parties to cease unauthorized use of NYPD trademarks, or of confusingly similar marks which feature the letters "NYPD" or designs similar to the NYPD Shield. For instance, at least two applicants for marks in the U.S. Patent and Trademark Office have abandoned their applications (Serial Nos. 78/091,079 and 76/327,600) for registration of marks confusingly similar to the City's NYPD Marks, as a result of the enforcement efforts of the City and its affiliates.

22.     The City also obtained the partial cancellation of a federal trademark (Registration No. 2,241,852) for a mark closely resembling the NYPD Shield. Further, the registrant in that case agreed to abandon another pending application in Class 25 (Serial No. 75/633,332), and to assist the City and NYPD if needed to obtain registrations for NYPD insignia.

23.     These and other enforcement efforts have ensured that the public associates the NYPD Marks solely with the City or its agency the NYPD, and the public is aware

- 6 -

that a variety of goods sold bearing the NYPD Marks are sold with the authorization or approval
of the City, and for the benefit of the NYPD.

### THE TRADEMARKS OF THE FDNY

24.     The City, through the FDNY, owns all copyrights, trademarks, logos,
names and insignias of the Fire Department of the City of New York, including the acronym
"FDNY" ("the FDNY Mark") and the FDNY Shield Design (collectively, "the FDNY Marks").

25.     The FDNY has used the FDNY Marks to identify itself and its services for
more than a century. A paid fire department, which replaced the volunteer companies that had
previously existed, was started in New York City in 1865, and the use of the designation FDNY
began shortly thereafter.

26.     The FDNY Shield Design was created in 1976 as part of a department-
wide contest. The winning design, which was adopted as the FDNY Shield Design, features the
colors red, white and blue with a gold border and a stylized Maltese cross with flames inside.
The design also features a stylized representation of the New York City skyline in the
background. Attached hereto as Exhibit E is a true and correct copy of the FDNY Shield Design.

27.     The City owns federal trademark Registration No. 2,606,740 for the
FDNY Mark. True and correct copies of printouts from the Patent and Trademark Office's on-
line database concerning the status of the City's federal trademark registration and the current
ownership information are attached as Exhibit F.

28.     The City, through the FDNY, has also obtained New York State trademark
registrations for its FDNY Mark (Reg. No. R-29814) and FDNY Shield Design (Reg. No. R-

29815) trademarks. Attached hereto as Exhibit G are true and correct copies of the New York State trademark registrations for these trademarks.

29.     The City also owns registrations for the FDNY Marks in the European Union (Reg. Nos. 2,589,588 and 2,589,596), and owns applications for registration of the FDNY Marks in Canada.

30.     Through many years of use by the FDNY, the FDNY Marks have come to represent the highest standards of quality and character with respect to matters of public safety and public service, throughout the United States and the world. As a result of the FDNY's exceptional reputation and the media attention and other publicity the FDNY has received throughout the years, the FDNY Marks have acquired tremendous goodwill and value, and are now recognized throughout the United States and the world as uniquely designating the Fire Department of the City of New York. The goodwill and reputation associated with the FDNY Marks, and the public's association of the FDNY Marks with the FDNY, have grown dramatically in light of the tragic events of September 11, 2001. The distinctive FDNY Marks are famous, and are among the best known trademarks and logos in the United States.

### Authorized Use of the FDNY Marks

31.     The City, through the FDNY, exploited the FDNY Marks well prior to the events of September 11, 2001. Indeed, the FDNY has approved more than twenty-five licensing agreements in connection with the use of the FDNY Marks and has otherwise exercised its ownership rights for many years.

32.     For instance, since approximately 1985, the Friends of the New York City Fire Department Collection, Inc., under an agreement with the FDNY, acting on behalf of the

- 8 -

City of New York, has operated the New York City Fire Museum ("the Museum"). The Museum is responsible for maintaining and displaying the FDNY's collection of historic fire fighting equipment and documents related to the FDNY. As part of its mission, the Museum provides educational programs and research materials related to the FDNY and the history of fire fighting in New York City.

33.     In order to raise funds to maintain the FDNY fire collection and support its educational goals, the Museum has operated a store on its premises, which has sold authorized merchandise bearing the FDNY Marks. Such merchandise was purchased by the Museum from the City's authorized manufacturers for retail sale solely to Museum patrons, for the benefit of the FDNY.

34.     The City has also approved the production and distribution of merchandise bearing the FDNY Marks through the FDNY Fire Safety Education Fund ("the Fund"). In 1998 the Fund entered into a license agreement with Code 3 Collectibles, Inc. for the manufacture and distribution of die cast miniature collectible fire trucks bearing the FDNY logo.

35.     Since October 2000, the Fund, under the auspices of the FDNY, has made retail sales of consumer goods bearing the FDNY Marks. In November 2001, the City through the FDNY entered into an agreement with the Fund, retroactive to October 2000, by which the Fund became the exclusive licensee of the FDNY Marks. This agreement was entered into to provide additional sources of revenue to support the Fund's charitable and educational activities. Through the Fund's efforts, the FDNY trademark and logo are now licensed to at least 24 sub-licensees in a variety of product categories. Proceeds from this very active licensing program, and from the sale of a variety of authorized items at the Fire Zone (the Fund's multimedia

educational facility in Rockefeller Center), help support the FDNY and its fire safety education, training, and other programs.

36.     There are also many instances in which the City, through the FDNY, has granted permission to various television and motion picture production companies to use the FDNY Marks.  For example, in a letter dated July 17, 2001, the City through the FDNY granted permission to Goldfish Pictures, Inc. to make incidental use of the FDNY Marks in a documentary film.  The agreement expressly provides that the FDNY Marks may not be used for any other purpose without the FDNY's prior written consent.

37.     Following the events of September 11, 2001, the FDNY was inundated with requests to use the FDNY Marks on a wide variety of items.  Some requests were approved, such as the manufacture and sale by Kmart of 50,000 hats bearing the FDNY logo.  However, most of these requests were rejected because the FDNY felt it would not be able to maintain adequate control over the quality of the products to be manufactured or the manner in which the FDNY Marks were to be used.

38.     Today, licenses to select manufacturers for the production of authorized goods bearing the FDNY Marks cover products as diverse as die cast collectable fire vehicles; t-shirts, sweatshirts, and baseball caps for men, women, and children; coffee mugs and other drinking glasses; keychains; pens, pen sets, pencils, and erasers; collector spoons and collector plate products; coasters; backpacks; paper cubes and loose leaf binders; children's dinner sets; coin banks; placemats; water globes; photo albums; coloring books and crayons; mouse pads; teddy bears; lunch boxes and thermoses; bottled water; video games; animated figures; toy electric trains and accessories, and more.

39.    Generally, authorized items bear a hangtag or packaging identifying the FDNY and showing the FDNY logo.  A copy of a representative hangtag that accompanies City-authorized merchandise is attached as Exhibit H.

### Enforcement of the FDNY Marks

40.    Prior to the events of September 11, 2001, the sale of merchandise bearing the FDNY Marks, both authorized and unauthorized, was relatively small.  The practice of the FDNY was to challenge every unauthorized use of the FDNY Marks of which it became aware.

41.    The Fund has actively enforced the FDNY Marks on behalf of the City. An aggressive enforcement program became necessary due to a dramatic increase in unauthorized use of the FDNY Marks after September 11, 2001.  At the time it became the City's exclusive FDNY licensee, the Fund instituted a formal enforcement program in support of its licensing efforts.  Specifically, the Fund monitors the FDNY Marks for infringement, sends cease and desist letters or pursues licensing arrangements where appropriate, and pursues domain name infringers.  The Fund has initiated several proceedings in the Internet Corporation for Assigned Names and Numbers ("ICANN"), and, on behalf of the City, has pursued state and federal registrations for key FDNY trademarks.

### INFRINGING ACTS BY DEFENDANT AND HARM TO THE CITY

42.    Notwithstanding the City's well-known, prior and exclusive common law and statutory trademark rights, the defendant, without the City's consent, has reproduced and/or caused to be reproduced the City's NYPD and FDNY Marks, and/or confusingly similar variations thereof, for Defendant's own use on a variety of items.

- 11 -

43.     Defendant's unauthorized products feature unfair and infringing copies of the NYPD and FDNY Marks, and substantially incorporate the distinctive design features of the City's NYPD Shield.

44.     Defendant has offered for sale to the general public goods which are identical to those authorized by the City under its NYPD and FDNY Marks, including keychains, hats, shorts and other clothing, toys, magnets, pins, plates, shot glasses, mugs, picture frames and similar items. See, e.g., Exhibit I.

45.     Defendant is offering its infringing and, in some cases, counterfeit, merchandise for sale to the general public from its internet site,                    , which is accessible to, and from which the infringing goods may be purchased by, the public throughout New York State, including in this judicial district.

46.     Upon information and belief, Defendant has made numerous internet sales of its infringing merchandise to buyers in New York City.

47.     Upon information and belief, Defendant has also made sales of its infringing merchandise to the general public through various wholesalers and retailers throughout New York State and in this judicial district.

48.     Upon information and belief, Defendant's goods are of inferior quality to authorized products bearing the NYPD and FDNY Marks.

49.     If the sale of the counterfeit and infringing merchandise by the defendant is not enjoined by this Court: (a) the public will be confused, misled and deceived as to the source and origin of Defendant's products and will mistakenly assume that Defendant's goods

are authorized, sponsored, approved or produced by or for the City or its agencies, or that

Defendant is affiliated with the City or its agencies; (b) consumers will be misled into purchasing

inferior-quality, unauthorized products, causing dilution and irreparable damage to the distinctive

value and reputation of the City's marks, and impairing the value of the NYPD and FDNY Marks

and licensing program; (c) the defendant will be unjustly enriched by its misappropriation of the

substantial goodwill of the City's NYPD and FDNY Marks; and (d) fundraising efforts for the

NYPD, the FDNY, and the City will suffer the permanent loss of substantial revenues from the

sale of licensed products.

50.     Defendant's marketing, distribution and sale of items with infringing

copies of the NYPD Marks, and with infringing and counterfeit copies of the FDNY Marks, is

likely to cause confusion, deception and mistake, all of which damage the public and the City.

51.     The City has no adequate remedy at law.

**COUNT I**
**(Trademark Infringement In Violation Of 15 U.S.C. §1114(1))**

52.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1-51 as

though fully set forth herein.

53.     Defendant's use of counterfeit copies of Plaintiff's federally registered

FDNY Mark in interstate commerce without the consent of the plaintiff, for the purpose of

manufacturing and/or selling counterfeit and infringing merchandise, has caused and continues to

cause confusion, mistake and deception in the minds of the public. By manufacturing and/or

selling the counterfeit and infringing merchandise, Defendant has counterfeited and infringed

Plaintiff's FDNY Mark and has willfully violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54.     By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. § 1116 et seq.

## COUNT II
### (False Designation of Origin In Violation Of 15 U.S.C. § 1125(a))

55.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1-54 as though fully set forth herein.

56.     Defendant's use of copies or simulations of the NYPD and FDNY Marks is a use in interstate commerce of a false designation of origin and/or a false description or representation, including words or symbols tending falsely to describe or represent the same. Such use has misled, and will continue to mislead, the public into believing that Defendant and its counterfeit and infringing merchandise originates with Plaintiff, is licensed by Plaintiff, or is in some way sanctioned by or affiliated with Plaintiff or its agencies.

57.     By so imitating, counterfeiting and infringing the NYPD and FDNY Marks, Defendant has willfully violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.     Defendant's unauthorized distribution and sale of the counterfeit and infringing merchandise has resulted in profits to Defendant and has thereby deprived Plaintiff of revenue to which it is entitled. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

## COUNT III
### (Trademark Dilution in Violation of 15 U.S.C. § 1125(c))

59.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1-58 as though fully set forth herein.

60.     Plaintiff's NYPD and FDNY Marks are inherently distinctive and famous, and through many years of use by Plaintiff they have come to represent, worldwide, the highest standards of quality and character unique to the NYPD and FDNY.  Royalties and retail sales of merchandise bearing Plaintiff's NYPD and FDNY Marks and logos have exceeded several million dollars in the past three fiscal years alone.  Since September 11, 2001, the names and indicia of the New York City Police Department and Fire Department have received extraordinary amounts of unsolicited, favorable publicity, and the public recognition of and admiration for these agencies and their names, marks, and logos has achieved levels heretofore unheard of in the City's history.

61.     The NYPD and FDNY Marks have, in many instances, been in use for over a century, and became distinctive and famous well prior to Defendant's infringing use of such Marks.

62.     The defendant's use of imitations of the famous and distinctive NYPD and FDNY Marks constitutes a commercial use in commerce of a mark or trade name, which has caused and will continue to cause irreparable dilution of the distinctive quality of Plaintiff's NYPD and FDNY Marks.  By its acts the defendant has willfully intended to trade on Plaintiff's reputation/or the reputation of the NYPD and FDNY and to cause dilution of Plaintiff's famous and distinctive NYPD and FDNY Marks.

63.   By reason of the foregoing, Plaintiff is entitled to injunctive and other relief.

64.   By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

## COUNT IV
### (Common Law Unfair Competition)

65.   Plaintiff repeats and re-alleges the allegations of Paragraphs 1-64 as though fully set forth herein.

66.   Defendant's use of imitations of Plaintiff's NYPD and FDNY Marks constitutes misappropriation and infringement of the Marks, actionable under the law of unfair competition.

67.   By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

## COUNT V
### (Trademark Infringement in Violation of General Business Law § 360-k)

68.   Plaintiff repeats and re-alleges the allegations of Paragraphs 1-67 as though fully set forth herein.

69.   Defendant's use of copies of Plaintiff's NYPD and FDNY Marks in New York State without Plaintiff's consent, for the purpose of manufacturing and/or selling counterfeit and infringing merchandise, has caused and continues to cause confusion, mistake and deception in the minds of the public.  By manufacturing and/or selling the counterfeit and infringing merchandise, Defendant has counterfeited and infringed Plaintiff's trademarks

registered under New York state law, and has willfully violated Section 360-k of the New York General Business Law.

70.    Defendant's misappropriation, counterfeiting and infringement of Plaintiff's NYPD and FDNY Marks in New York State were willfully committed with the intent to cause confusion or mistake or deception among the consuming public.

71.    By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in New York General Business Law §§ 360-k and 360-l.

## COUNT VI
### (Trademark Infringement In Violation Of New York Arts And Cultural Affairs Law Section 33.09)

72.    Plaintiff repeats and re-alleges the allegations of Paragraphs 1-71 as though fully set forth herein.

73.    Defendant's possession of counterfeit marks and/or dies, plates, brands or other things for the purpose of making false or counterfeit trademarks, and its acts of affixing copies and/or confusingly similar variations of Plaintiff's NYPD and FDNY Marks to the counterfeit and infringing merchandise, without Plaintiff's consent, knowing the same to be an imitation of Plaintiff's Marks and knowingly selling or offering such merchandise for sale constitute a violation of New York Arts and Cultural Affairs Law §§ 33.09(2), (3) and (4).

74.    By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained.

## COUNT VII
**(Deceptive Trade Practices and False Advertising In Violation Of New York General Business Law Sections 349 And 350-a and -d)**

75.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1-74 as though fully set forth herein.

76.     Defendant's misappropriation, counterfeiting and infringement of Plaintiff's NYPD and FDNY Marks represent a deliberate attempt to mislead consumers into believing either (a) that the defendant is in some manner affiliated with or sanctioned by Plaintiff and/or the NYPD or FDNY; or (b) that the defendant's merchandise is authorized, sponsored, or otherwise affiliated with Plaintiff and/or the NYPD or FDNY.

77.     By engaging in such false and misleading marking of its products, Defendant has engaged in deceptive acts or practices in violation of New York General Business Law § 349 and false advertising in violation of New York General Business Law § 350-a and –d.

78.     Such violations have resulted, upon information and belief, in profits to Defendant and have substantially harmed Plaintiff by depriving it of revenue to which it is entitled as a result of Defendant's unauthorized association of its merchandise with the NYPD or FDNY.

79.     By reason of the foregoing, Plaintiff is entitled to the remedies provided for in New York General Business Law §§ 349 and 350-a and –d.

## COUNT VIII
**(Violation Of New York General Business Law Section 360-l)**

80.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1-79 as though fully set forth herein.

- 18 -

81.    Defendant's misappropriation, counterfeiting and infringement of

Plaintiff's NYPD and FDNY Marks create a likelihood of dilution of the distinctive quality of

such marks in violation of Section 360-l of the New York General Business Law.

82.    By reason of the foregoing, Plaintiff has been injured in an amount not yet

ascertained and is entitled to the remedies provided for in Section 360-l of the New York General

Business Law.

**WHEREFORE,** Plaintiff prays for judgment:

A. Finding that its NYPD and FDNY Marks are valid;

B. Finding that Defendant, by the acts complained of herein, has infringed and
diluted Plaintiff's NYPD and FDNY Marks and has competed unfairly with
Plaintiff and its licensees, and that the acts of the defendant complained of
herein will damage and diminish the distinctiveness of the NYPD and FDNY
Marks unless enjoined by this Court,

C. Be entered against the defendant as follows:

(1)    That the defendant, its officers, agents, servants, employees,
warehousemen, warehousers, and all other persons in concert or participation with Defendant be
permanently enjoined from further acts of trademark infringement, dilution, or unfair
competition, and particularly from, in any manner, directly or indirectly:

(a) using or otherwise infringing Plaintiff's NYPD and/or FDNY Marks;

(b) using any mark or indicia that incorporates any of Plaintiff's NYPD or FDNY
Marks;

(c) manufacturing, distributing, circulating, selling, marketing, moving or
otherwise disposing of merchandise bearing any simulation, reproduction,
counterfeit, copy, colorable imitation or confusingly similar imitation of
Plaintiff's NYPD or FDNY Marks, or marketing, advertising or displaying its
goods in any way that tends to deceive, mislead or confuse the public into
believing that Defendant's merchandise is in any way sanctioned by or
affiliated with Plaintiff or an of its agencies;

    (d) using any false designation of origin or false description (including, without limitation, any letters or symbols) which can, or is likely to, lead the trade or public to believe that any product manufactured, advertised, distributed and/or sold by the defendant is in any manner associated or connected with Plaintiff, or is sold, licensed, sponsored, approved or authorized by Plaintiff;

    (e) otherwise competing unfairly with Plaintiff, its agencies, or its authorized licensees;

    (f) diluting the distinctive quality of Plaintiff's NYPD and FDNY Marks; and

    (g) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

    (2)    That Defendant be directed to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the defendant has complied with the injunction;

    (3)    That Defendant be required to account for and pay over to Plaintiff all gains, profits and advantages realized from the sale of counterfeit and infringing merchandise;

    (4)    That Defendant be required to pay to Plaintiff such damages as Plaintiff has sustained as a consequence of Defendant's acts of trademark infringement, unfair competition, deceptive and unfair practices and trademark dilution, including trebled damages pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and, if the City so elects, statutory damages for its willful counterfeiting of the FDNY Mark under 15 U.S.C. § 1117;

    (5)    That Defendant be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, the NYPD and FDNY Marks, as well as all manufacturing plates, screens, molds, matrices, or other equipment used to reproduce the NYPD and FDNY Marks.

    (6)    That Defendant be required to pay Plaintiff's costs, expenses and reasonable attorney fees in connection with this action as provided in 15 U.S.C. § 1117; and

    (7)    That Plaintiff have such other, further and different relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues of this suit.

Dated:  New York, New York   FITZPATRICK, CELLA, HARPER & SCINTO
     April 12, 2004     30 Rockefeller Plaza
              New York, New York 10112-3800

          By: _____

          NICHOLAS M. CANNELLA (NC9343)
          PASQUALE A. RAZZANO (PR7840)
          TIMOTHY J. KELLY (TK8241)
          TILA M. DUHAIME (TD8787)

          MICHAEL A. CARDOZO
          ALAN H. KLEINMAN (AK4284)
          KATHERINE WINNINGHAM (KW2900)
          Corporation Counsel of the
           City of New York
          Affirmative Litigation Division
          100 Church Street, New York, New York 10007
          (212) 788-1012

Attorneys for Plaintiff The City of New York

NY Main 420836 v1

# EXHIBIT A

# EXHIBIT A



# EXHIBIT B



**UNITED STATES PATENT AND TRADEMARK OFFICE**

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Apr 8 04:40:19 EDT 2004*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout    Please logout when you are done to release system resources allocated for you.

Start    List At: [_____]    OR    Jump    to record: [_____]    **Record 2 out of 2**

Check Status    *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*



**Word Mark**    POLICE DEPARTMENT CITY OF NEW YORK

**Goods and Services**

IC 006. US 002 012 013 014 023 025 050. G & S: Metal goods; namely, metal key chains, metal key rings, metal holiday ornaments. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 009. US 021 023 026 036 038. G & S: Electric and scientific apparatus; namely, thermometers not for medical use, mouse pads, decorative refrigerator magnets, children's video tapes, children's educational software, video tapes featuring public safety and health information. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 014. US 002 027 028 050. G & S: Jewelry; namely, lapel pins, costume jewelry, cuff links, pendants, tie clips, tie pins. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 020. US 002 013 022 025 032 050. G & S: Furniture and articles not otherwise classified; namely, plastic key chain tags, cushions, plastic figurines, picture frames. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 021. US 002 013 023 029 030 033 040 050. G & S: Housewares and glasses; namely, mugs, lunch boxes, thermal insulated containers for food or beverages, drinking glasses,

commemorative plates, decorative plates and souvenir plates. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 025. US 022 039. G & S: Clothing; namely, caps, t-shirts and sweatshirts. FIRST USE: 19710000. FIRST USE IN COMMERCE: 19710000

IC 028. US 022 023 038 050. G & S: Toys and sporting goods; namely, toy model cars, stuffed toy animals, toy dolls and accessories therefor, articulated toy figurines, toy banks, Christmas tree ornaments. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

| | |
|---|---|
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 010103 010111 031501 170502 240102 240103 240325 240502 |
| **Serial Number** | 76342569 |
| **Filing Date** | November 28, 2001 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) City of New York MUNICIPAL CORPORATION NEW YORK 100 Church Street New York NEW YORK 10007 |
| **Attorney of Record** | Richard B. Verner |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CITY OF NEW YORK" and "POLICE DEPARTMENT" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES | CONTACT US | PRIVACY STATEMENT**

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2004-04-08 12:13:43 ET

**Serial Number:** 76342569

**Registration Number:** (NOT AVAILABLE)

**Mark**



**(words only):** POLICE DEPARTMENT CITY OF NEW YORK

**Standard Character claim:** No

**Current Status:** Further action on the application has been suspended.

**Date of Status:** 2004-01-28

**Filing Date:** 2001-11-28

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 115

**Attorney Assigned:**
GAYNOR BARBARA ANNE <u>Employee Location</u>

**Current Location:** M6D -TMO Law Office 115 - Docket Clerk

**Date In Location:** 2004-04-07

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. City of New York

**Address:**
City of New York
100 Church Street

New York, NY 10007
United States
**Legal Entity Type:** MUNICIPAL CORPORATION
**State or Country Where Organized:** New York

---

### GOODS AND/OR SERVICES

---

Metal goods; namely, metal key chains, metal key rings, metal holiday ornaments
**International Class:** 006
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Electric and scientific apparatus; namely, thermometers not for medical use, mouse pads, decorative refrigerator magnets, children's video tapes, children's educational software, video tapes featuring public safety and health information
**International Class:** 009
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Jewelry; namely, lapel pins, costume jewelry, cuff links, pendants, tie clips, tie pins
**International Class:** 014
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Furniture and articles not otherwise classified; namely, plastic key chain tags, cushions, plastic figurines, picture frames
**International Class:** 020
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Housewares and glasses; namely, mugs, lunch boxes, thermal insulated containers for food or beverages, drinking glasses, commemorative plates, decorative plates and souvenir plates
**International Class:** 021
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Clothing; namely, caps, t-shirts and sweatshirts
**International Class:** 025
**First Use Date:** 1971-00-00
**First Use in Commerce Date:** 1971-00-00

**Basis:** 1(a)

Toys and sporting goods; namely, toy model cars, stuffed toy animals, toy dolls and accessories therefor, articulated toy figurines, toy banks, Christmas tree ornaments
**International Class:** 028
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

**Disclaimer:** "CITY OF NEW YORK" and "POLICE DEPARTMENT"

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

2003-08-01 - Case File in TICRS

2003-01-02 - Letter of suspension mailed

2002-08-09 - Communication received from applicant

2002-08-19 - Communication received from applicant

2002-08-12 - PAPER RECEIVED

2002-02-11 - Non-final action mailed

2002-02-09 - Case file assigned to examining attorney

---

## CONTACT INFORMATION

**Correspondent (Owner)**
Richard B. Verner (Attorney of record)

RICHARD B. VERNER
SALANS HERTZFELD HEILBRONN CHRISTY ET AL
620 FIFTH AVENUE
NEW YORK, NEW YORK 10020

**Phone Number:** (212) 632-3957

---



| | Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Apr 8 04:40:19 EDT 2004*

PTO HOME   TRADEMARK   TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   BOTTOM   HELP   PREV LIST
CURR LIST   NEXT LIST   FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At: [        ]   OR   Jump   to record: [        ]   **Record 1 out of 2**

Check Status   *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

**Word Mark**     NYPD

**Goods and Services**

IC 006. US 002 012 013 014 023 025 050. G & S: Metal goods; namely, metal key chains, metal key rings, metal holiday ornaments. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 009. US 021 023 026 036 038. G & S: Electric and scientific apparatus; namely, thermometers not for medical use, mouse pads, decorative refrigerator magnets, children's video tapes, children's educational software, video tapes featuring public safety and health information. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 014. US 002 027 028 050. G & S: Jewelry; namely, lapel pins, costume jewelry, cuff links, pendants, tie clips, tie pins. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 020. US 002 013 022 025 032 050. G & S: Furniture and articles not otherwise classified; namely, plastic key chain tags, cushions, plastic figurines, picture frames. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 021. US 002 013 023 029 030 033 040 050. G & S: Housewares and glasses; namely, mugs, lunch boxes, thermal insulated containers for food or beverages, drinking glasses, commemorative plates, decorative plates and souvenir plates. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

IC 025. US 022 039. G & S: Clothing; namely, caps, t-shirts and sweatshirts. FIRST USE: 19931100. FIRST USE IN COMMERCE: 19931100

IC 028. US 022 023 038 050. G & S: Toys and sporting goods; namely, toy model cars, stuffed toy animals, toy dolls and accessories therefor, articulated toy figurines, toy banks, Christmas tree ornaments. FIRST USE: 20001000. FIRST USE IN COMMERCE: 20001000

| | |
|---|---|
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76342567 |
| **Filing Date** | November 28, 2001 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | February 10, 2004 |
| **Owner** | (APPLICANT) City of New York MUNICIPAL CORPORATION NEW YORK 100 Church Steet New York NEW YORK 10007 |
| **Attorney of Record** | Richard B. Verner |
| **Prior Registrations** | 2139804;2143609;2147995;2149603;AND OTHERS |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES | CONTACT US | PRIVACY STATEMENT**

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2004-04-08 12:12:50 ET

**Serial Number:** 76342567

**Registration Number:** (NOT AVAILABLE)

**Mark (words only):** NYPD

**Standard Character claim:** No

**Current Status:** A request for an extension of time to file an opposition has been filed at the Trademark Trial and Appeal Board.

**Date of Status:** 2004-02-18

**Filing Date:** 2001-11-28

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 115

**Attorney Assigned:**
GAYNOR BARBARA ANNE Employee Location

**Current Location:** 657 -Pre-Publication Final Review

**Date In Location:** 2004-04-07

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. City of New York

**Address:**
City of New York
100 Church Steet
New York, NY 10007
United States
**Legal Entity Type:** MUNICIPAL CORPORATION
**State or Country Where Organized:** New York

---

## GOODS AND/OR SERVICES

Metal goods; namely, metal key chains, metal key rings, metal holiday ornaments

**International Class:** 006
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Electric and scientific apparatus; namely, thermometers not for medical use, mouse pads, decorative refrigerator magnets, children's video tapes, children's educational software, video tapes featuring public safety and health information
**International Class:** 009
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Jewelry; namely, lapel pins, costume jewelry, cuff links, pendants, tie clips, tie pins
**International Class:** 014
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Furniture and articles not otherwise classified; namely, plastic key chain tags, cushions, plastic figurines, picture frames
**International Class:** 020
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Housewares and glasses; namely, mugs, lunch boxes, thermal insulated containers for food or beverages, drinking glasses, commemorative plates, decorative plates and souvenir plates
**International Class:** 021
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

Clothing; namely, caps, t-shirts and sweatshirts
**International Class:** 025
**First Use Date:** 1993-11-00
**First Use in Commerce Date:** 1993-11-00

**Basis:** 1(a)

Toys and sporting goods; namely, toy model cars, stuffed toy animals, toy dolls and accessories therefor, articulated toy figurines, toy banks, Christmas tree ornaments
**International Class:** 028
**First Use Date:** 2000-10-00
**First Use in Commerce Date:** 2000-10-00

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

**Prior Registration Number(s):**
2139804
2143609
2147995
2149603

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

2004-02-18 - Extension of time to oppose - Filed

2004-02-10 - Published for opposition

2004-01-21 - Notice of publication

2003-12-08 - Approved for Pub - Principal Register (Initial exam)

2003-11-03 - Communication received from applicant

2003-11-03 - PAPER RECEIVED

2003-10-27 - Case File in TICRS

2002-10-08 - Letter of suspension mailed

2002-07-12 - Communication received from applicant

2002-08-12 - Communication received from applicant

2002-08-12 - PAPER RECEIVED

2002-02-11 - Non-final action mailed

2002-02-09 - Case file assigned to examining attorney

---

## CONTACT INFORMATION

**Correspondent (Owner)**
Richard B. Verner (Attorney of record)

RICHARD B. VERNER

SALANS HERTZFELD HEILBRONN CHRISTY ET AL
620 FIFTH AVENUE
NEW YORK, NEW YORK 10020

# EXHIBIT C

State of New York ● Department of State
## Certificate of Trademark Registration

I, RANDY A. DANIELS, SECRETARY OF STATE OF THE STATE OF NEW YORK DO CERTIFY THAT

in accordance with the application filed in this office on the  16th day of October, 2001

the TRADEMARK described below has been duly registered in this Department pursuant to Article 24 of the

General Business Law, on behalf of   New York City Police Department,

whose address is:   One Police Plaza,  New York NY 10038

The State of Incorporation or General Partners are:   —

| CLASS OF GOODS | REGISTRATION DATE | EXPIRATION DATE |
|---|---|---|
| 6,9,14,20,21,25,28 | 10-16-01 | 10-16-11 |
| **REGISTRATION NUMBER** | **DATE FIRST USED IN U.S.A.** | **DATE FIRST USED IN NEW YORK** |
| R-29799 | 11-93 | 11-93 |

Description of Trademark and Description of Goods on which the Trademark is used:

NYPD

Used in connection with mouse pads, refrigerator magnets, children's video tapes, thermometers not for medical use, lapel pins, costume jewelry, tie clips, plastic key chain tags, cushions, plastic figurines, picture frames, mugs, lunch boxes, thermos bottles, glasses, plates, caps, shirts, sweatshirts, toy model cars, stuffed toy animals, toy dolls, toy banks, Christmas tree ornaments, etc.



Special Deputy Secretary of State

State of New York ● Department of State
## Certificate of Trademark Registration

I, RANDY A. DANIELS, SECRETARY OF STATE OF THE STATE OF NEW YORK DO CERTIFY THAT

in accordance with the application filed in this office on the  16th day of October, 2001

the TRADEMARK described below has been duly registered in this Department pursuant to Article 24 of the

General Business Law, on behalf of   New York City Police Department,

whose address is:   One Police Plaza,  New York NY 10038

The State of Incorporation or General Partners are:   —



| CLASS OF GOODS | REGISTRATIO |
|---|---|
| 6,9,14,20,21,25,28 | |
| **REGISTRATION NUMBER** | DATE FIRST U |
| R-29800 | |

Description of Trademark and D

New York City Police Department written on a shield w
the center of the seal is a shield-shape with the crossed ar
an eagle

Used in connection with mouse pads, refrigerator mag
costume jewelry, tie clips, plastic key chain tags, cushion
glasses, plates, caps, shirts, sweatshirts, toy model cars, st

DOS-685(Rev.3/01)

State of New York ● Department of State
## Certificate of Trademark Registration

I, RANDY A. DANIELS, SECRETARY OF STATE OF THE STATE OF NEW YORK DO CERTIFY THAT

in accordance with the application filed in this office on the 16th day of October, 2001

the TRADEMARK described below has been duly registered in this Department pursuant to Article 24 of the

General Business Law, on behalf of   New York City Police Department,

whose address is:   One Police Plaza,  New York NY 10038

The State of Incorporation or General Partners are:   —

| CLASS OF GOODS | REGISTRATION DATE | EXPIRATION DATE |
|---|---|---|
| 6,9,14,20,21,25,28 | 10-16-01 | 10-16-11 |
| **REGISTRATION NUMBER** | **DATE FIRST USED IN U.S.A.** | **DATE FIRST USED IN NEW YORK** |
| R-29800 | 1971 | 1971 |

Description of Trademark and Description of Goods on which the Trademark is used:

New York City Police Department written on a shield which includes the scales of justice above an inverted 'v' that has five stars. In the center of the seal is a shield-shape with the crossed arms of a windmill on it and a figure on each side.  Above the center shield is an eagle

Used in connection with mouse pads, refrigerator magnets, children's video tapes, thermometers not for medical use, lapel pins, costume jewelry, tie clips, plastic key chain tags, cushions, plastic figurines, picture frames, mugs, lunch boxes, thermos bottles, glasses, plates, caps, shirts, sweatshirts, toy model cars, stuffed toy animals, toy dolls, toy banks, Christmas tree ornaments, etc.

WITNESS my hand and the seal of the State of New York

In the City of Albany this 5th

Day of  December, 2001.

DOS-685(Rev.3/01)

RANDY A. DANIELS
Secretary of State

By:

Special Deputy Secretary of State

# EXHIBIT D









# EXHIBIT E

# EXHIBIT E



# EXHIBIT F



UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Mon Apr 12 04:29:59 EDT 2004*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout Please logout when you are done to release system resources allocated for you.

Start List At: [          ] OR Jump to record: [          ] **Record 2 out of 4**

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | FDNY |
| **Goods and Services** | IC 025. US 022 039. G & S: clothing, namely, t-shirts, sweat shirts, hats, caps, baseball caps, jackets, shirts, head wear, warm up suits, and wind resistant jackets, pants and shirts. FIRST USE: 18980101. FIRST USE IN COMMERCE: 19960101 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76128785 |
| **Filing Date** | September 12, 2000 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 7, 2001 |
| **Registration Number** | 2606740 |
| **Registration Date** | August 13, 2002 |
| **Owner** | (REGISTRANT) NEW YORK CITY FIRE DEPARTMENT GOVERNMENT AGENCY NEW YORK 9 MetroTech Center Brooklyn NEW YORK 11201 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Lai-Sun Yee |

| | |
|---|---|
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

PTO HOME  TRADEMARK  TESS HOME  NEW USER  STRUCTURED  FREE FORM  BROWSE DICT  TOP  HELP  PREV LIST

CURR LIST  NEXT LIST  FIRST DOC  PREV DOC  NEXT DOC  LAST DOC

**HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES | CONTACT US | PRIVACY STATEMENT**

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2004-04-08 12:32:15 ET

**Serial Number:** 76128785 <u>Assignment Information</u>

**Registration Number:** 2606740 <u>Assignment Information</u>

**Mark (words only):** FDNY

**Standard Character claim:** No

**Current Status:** Registered.

**Date of Status:** 2002-08-13

**Filing Date:** 2000-09-12

**Transformed into a National Application:** No

**Registration Date:** 2002-08-13

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 109

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 940 -Trademark Search Library

**Date In Location:** 2004-04-06

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

1. NEW YORK CITY FIRE DEPARTMENT

**Address:**
NEW YORK CITY FIRE DEPARTMENT
9 MetroTech Center
Brooklyn, NY 11201
United States
**Legal Entity Type:** GOVERNMENT AGENCY
**State or Country Where Organized:** New York

---

### GOODS AND/OR SERVICES

clothing, namely, t-shirts, sweat shirts, hats, caps, baseball caps, jackets, shirts, head wear, warm up suits, and wind resistant jackets, pants and shirts

**International Class:** 025
**First Use Date:** 1898-01-01
**First Use in Commerce Date:** 1996-01-01

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

2002-08-13 - Registered - Principal Register

2001-09-27 - Extension of time to oppose - Filed

2001-08-07 - Published for opposition

2001-07-25 - Notice of publication

2001-04-30 - Approved for Pub - Principal Register (Initial exam)

2001-04-24 - Examiner's amendment mailed

2001-03-07 - Case file assigned to examining attorney

---

## CONTACT INFORMATION

**Correspondent (Owner)**
Lai-Sun Yee (Attorney of record)

LAI-SUN YEE
NEW YORK CITY FIRE DEPARTMENT
9 METROTECH CTR
BROOKLYN NY 11201-5431

---



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



Assignments on the Web > Trademark Query

# Trademark Assignment Abstract of Title

**Total Assignments: 1**
**Serial #:** 76128785    **Filing Dt:** 09/12/2000    **Reg #:** 2606740    **Reg. Dt:** 08/13/2002
**Registrant:** NEW YORK CITY FIRE DEPARTMENT
**Mark:** FDNY
**Assignment: 1**
**Reel/Frame:** 2653/0751    **Received:** 01/23/2003    **Recorded:** 01/21/2003    **Pages:** 4
**Conveyance:** ASSIGNS THE ENTIRE INTEREST
**Assignor:** NEW YORK CITY FIRE DEPARTMENT    **Exec Dt:** 01/08/2003
                                                **Entity Type:** GOVERNMENT AGENCY
                                                **Citizenship:** NONE

**Assignee:** NEW YORK, THE CITY OF    **Entity Type:** MUNICIPAL CORPORATION
              100 CHURCH STREET
              NEW YORK, NEW YORK 10007    **Citizenship:** NONE

**Correspondent:** LISA ROSENBURGH
                   ROCKEFELLER CENTER
                   620 FIFTH AVENUE
                   NEW YORK, NY 10020

Search Results as of: 04/08/2004 12:32 PM

If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 703-308-9723

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

# EXHIBIT G

State of New York ● Department of State
## Certificate of Trademark Registration

I, RANDY A. DANIELS, SECRETARY OF STATE OF THE STATE OF NEW YORK DO CERTIFY THAT

in accordance with the application filed in this office on the  12th day of December, 2001

the TRADEMARK described below has been duly registered in this Department pursuant to Article 24 of the

General Business Law, on behalf of   New York City Fire Department,

whose address is:  9 Metro Tech Center, Brooklyn NY 11201

The State of Incorporation or General Partners are:  —

| CLASS OF GOODS | REGISTRATION DATE | EXPIRATION DATE |
|---|---|---|
| 6,9,14,20,21,25,28 | 12-12-01 | 12-12-11 |
| **REGISTRATION NUMBER** | **DATE FIRST USED IN U.S.A.** | **DATE FIRST USED IN NEW YORK** |
| R-29814 | 1996 | 1996 |

Description of Trademark and Description of Goods on which the Trademark is used:

FDNY

Used in connection with, including but not limited to, key chains, metal key rings, holiday ornaments, mouse pads, magnets, children's video tapes, lapel pins, costume jewelry, cuff links, tie clips, tie pins, pendants, plastic key chain tags, figurines, picture frames, mugs, lunch boxes, thermos bottles, drinking glasses, plates, hats, jackets, pants, t-shirts, toy model cars, stuffed toy animals, dolls, toy figurines, banks, etc.



WITNESS my hand and the seal of the State of New York

In the City of Albany this 26th

Day of December, 2001.

RANDY A. DANIELS
Secretary of State

By:

Special Deputy Secretary of State

State of New York ● Department of State
## Certificate of Trademark Registration

I, RANDY A. DANIELS, SECRETARY OF STATE OF THE STATE OF NEW YORK DO CERTIFY THAT

in accordance with the application filed in this office on the  12th day of December, 2001

the TRADEMARK described below has been duly registered in this Department pursuant to Article 24 of the

General Business Law, on behalf of   New York City Fire Department,

whose address is:  9 Metro Tech Center, Brooklyn NY 11201

The State of Incorporation or General Partners are:  —

| CLASS OF GOODS | REGISTRATION DATE | EXPIRATION DATE |
|---|---|---|
| 6,9,14,20,21,25,28 | 12-12-01 | 12-12-11 |
| **REGISTRATION NUMBER** | **DATE FIRST USED IN U.S.A.** | **DATE FIRST USED IN NEW YORK** |
| R-29815 | 1976 | 1976 |

Description of Trademark and Description of Goods on which the Trademark is used:

Fire Department City of New York and design of the city skyline.  Underneath is a circle which is a stylized version of the maltese cross with a flame design in the center.

Used in connection with, including but not limited to, key chains, metal key rings, holiday ornaments, mouse pads, magnets, children's video tapes, lapel pins, costume jewelry, cuff links, tie clips, tie pins, pendants, plastic key chain tags, figurines, picture frames, mugs, lunch boxes, thermos bottles, drinking glasses, plates, hats, jackets, pants, t-shirts, toy model cars, stuffed toy animals, dolls, toy figurines, banks, etc.



WITNESS my hand and the seal of the State of New York
In the City of Albany this 26th

Day of December, 2001.

RANDY A. DANIELS
Secretary of State

By:

Special Deputy Secretary of State

# EXHIBIT H

**www.fdnyfirezone.com**

*Become part of our Fire Safety Team. Keeping you and your family fire safe at home, at work or at school takes planning, preparation and teamwork. Fire prevention starts with you.*

**INSTALL SMOKE ALARMS**
Test them often to make sure they work. Replace the batteries at least twice a year when you change your clock for daylight savings.

**HAVE A HOME FIRE ESCAPE PLAN**
Develop a home escape plan with your family in case of fire. Practice it. Have a pre-arranged meeting place somewhere outside.

**HOME SAFETY INSPECTION**
Conduct a safety inspection of potential fire hazards in the home. **Eliminate** them. Make every room fire safe.



STYLE: FDNY300
COLOR: NAVY
SIZE: L
**PRICE: $34.95**



4 88888 00038 9

NEW YORK CITY FIRE DEPARTMENT
**TOP TEN FIRE SAFETY TIPS**

1. Smoke alarms save lives – install and maintain them.

2. Smoking and drinking are a lethal combination. Smoking carelessness is a leading cause of fire. Don't empty ashtrays into the trash.

3. Keep matches, lighters, and candles away from children.

4. Be careful with candles. Don't leave them unattended. Never sleep with candles burning.

5. Remove electrical cords from under rugs and behind radiators. Never nail or staple the cord to walls or molding.

6. Don't overload outlets and extension cords.

7. Never put a portable space heater near drapes, furniture, bedding or other flammable materials.

8. Move flammable liquids stored near the stove or other heat source to a safe, distant location.

9. Remove all materials on or near your stove that could catch fire, including paper, dish cloths, etc.

10. Early notification can make **all** the difference – in case of fire call **911**.



*All proceeds from the sale of Fire Zone products benefit the New York City Fire Safety Education Fund. The Fund supports FDNY public education and outreach programs.*

**w w w . f d n y f i r e z o n e . c o m**

*Become part of our Fire Safety Team. Keeping you and your family fire safe at home, at work or at school takes planning, preparation and teamwork. Fire prevention starts with you.*

**INSTALL SMOKE ALARMS**
Test them often to make sure they work. Replace the batteries at least twice a year when you change your clock for daylight savings.

**HAVE A HOME FIRE ESCAPE PLAN**
Develop a home fire escape plan with your family in case of fire. Practice it. Have a pre-arranged meeting place somewhere outside.

**HOME SAFETY INSPECTION**
Conduct a safety inspection of potential fire hazards in the home. **Eliminate** them. Make every room fire safe.



STYLE: FDNY200R
COLOR: RED
SIZE: O/S
**PRICE: $15.95**

4 88888 00203 1

---

**NEW YORK CITY FIRE DEPARTMENT**
**TOP TEN FIRE SAFETY TIPS**

1. Smoke alarms save lives – install and maintain them.

2. Smoking and drinking are a lethal combination. Smoking carelessness is a leading cause of fire. Don't empty ashtrays into the trash.

3. Keep matches, lighters, and candles away from children.

4. Be careful with candles. Don't leave them unattended. Never sleep with candles burning.

5. Remove electrical cords from under rugs and behind radiators. Never nail or staple the cord to walls or molding.

6. Don't overload outlets and extension cords.

7. Never put a portable space heater near drapes, furniture, bedding or other flammable materials.

8. Move flammable liquids stored near the stove or other heat source to a safe, distant location.

9. Remove all materials on or near your stove that could catch fire, including paper, dish cloths, etc.

10. Early notification can make **all** the difference – in case of fire call **911**.



*A significant portion of the proceeds from the sale of Fire Zone products benefits the FDNY Fire Safety Education Fund. The Fund supports FDNY public education and outreach programs. When in New York, please visit us at 34 West 51st Street in Rockefeller Center or online at www.fdnyfirezone.com.*

# EXHIBIT I

# EXHIBIT I

| Goods authorized by the City | Unauthorized goods offered by Defendant |
|---|---|
|  |  |
|  |  |
|  |  |

| Goods authorized by the City | Unauthorized goods offered by Defendant |
|---|---|



| Goods authorized by the City | Unauthorized goods offered by Defendant |
|---|---|

